IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

Case No. 4:26-cv-204

LUO LIU,

    Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

    Defendant.

## COMPLAINT

Plaintiff Luo Liu ("Plaintiff") sues the Individuals, Corporations, Limited Liability Companies, Partnerships and Unincorporated Associations identified in Schedule A[1] (collectively, "Defendants"), and alleges as follows:

### THE PARTIES

1. Plaintiff is an individual who is a citizen of China residing in China.

2. Defendants are numerous partnerships and unincorporated associations.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

---

[1] Plaintiff intends to file a motion to file Schedule A under seal.

4.    This Court has personal jurisdiction over Defendants because they have maintained sufficient minimum contacts with this State such that the exercise of personal jurisdiction over them would not offend traditional notions of fair play and substantial justice.

5.    Venue properly lies in this district pursuant to 28 U.S.C. § 1400(b) and 28 U.S.C. § 1391(c)(3) because Defendants are not residents of the United States. Venue is also proper in this District since Defendants are, upon information and belief, aliens engaged in infringing activities and causing harm within this District by advertising, offering to sell, selling or shipping infringing products into this District.

I.    **The Patents at Issue in this Lawsuit**

6.    Plaintiff is the owner of the three patented design at issue (collectively, the "Patents").

7.    A true and correct copy of the Patents is attached hereto as **Exhibit "A."**[2]

II.   **Defendants' Unlawful Activities**

8.    The success of the Patents has resulted in significant infringement and counterfeiting.

9.    Plaintiff has discovered significant infringement and counterfeiting. Plaintiff has identified numerous domain names linked to fully interactive websites and marketplace listings on platforms such as Amazon, which were offering for sale, selling, and importing the counterfeit products ("Infringing Products") to consumers in this Judicial District and throughout the United States.

10.   Defendants have persisted in creating such online marketplaces and Internet stores, like the Defendant Internet Stores. In fact, such online marketplaces and stores are estimated to

---

[2] Plaintiff intends to file a motion to file Exhibit "A" under seal.

receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price of goods seized by the United States government in fiscal year 2021 was over $3.3 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.[3]

11. Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine products in accordance with the Patents.

12. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

13. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

14. Plaintiff has not licensed or authorized Defendants to use the Patents.

15. Upon information and belief, Defendants deceive unknowing consumers by using the Patents without authorization within the product descriptions of their Defendant Internet Stores to attract customers, as well as embodied by the Infringing Products themselves.

---

[3] Department of Homeland Security, Combating Trafficking in Counterfeit and Pirated Goods, Jan. 24, 2020, (https://www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf)

16. Upon information and belief, Defendants have targeted sales to Texas residents by setting up and operating e-commerce stores that target United States consumers using one or more seller aliases, offer shipping to the United States, including Texas, accept payment in U.S. dollars and have sold Infringing Products to residents of Texas.

17. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the Patents in connection with the advertisement, distribution, offering for sale, sale and import of Infringing Products into the United States and Texas over the Internet.

18. Upon information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores.

19. For example, it is common practice for infringers to register their domain names and/or User Accounts with incomplete information, randomly typed letters, or omitted cities or states.

20. And many Defendant Internet Stores use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A, as well as other unknown fictitious names and addresses.

21. Upon information and belief, even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, some of the Defendant marketplace websites have virtually identical layouts, even though different aliases were used to register the respective domain names.

22. In addition, the Infringing Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

23. The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

24. In addition, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under User Accounts once they receive notice of a lawsuit.[4]

25. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring takedown demands sent by brand owners.[5]

26. Defendant has offered to sell Infringing Products into the United States, including Texas (in this Judicial District), which is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

---

[4] https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumersabout-counterfeit-goods-during (noting counterfeiters are adept at "setting up online stores to lure the public into thinking they are purchasing legitimate goods on legitimate websites").

[5] While discussed in the context of false pharma supply chains, rogue internet servers and sellers are a well-known tactic that have even been covered in congressional committee hearings. https://www.govinfo.gov/content/pkg/CHRG-113hhrg88828/html/CHRG-113hhrg88828.htm.

27. Plaintiff is forced to file this action to combat Defendants' infringement of Plaintiff's Patents, as well as to protect unknowing consumers from purchasing Infringing Products over the internet.

28. All conditions precedent to this action have been performed or have been waived.

## COUNT I – DESIGN PATENT INFRINGEMENT

29. Plaintiff re-alleges and incorporates paragraphs 1 through 25 as set forth above.

30. The Patents are new, original, and ornamental designs that are subject to the full protection of the United States patent laws (35 U.S.C. § 171 *et seq.*).

31. Plaintiff owns a valid design patent in the Patents, having registered the Patents with the United States Patent and Trademark Office.

32. As the owner of the design patent, Plaintiff has standing to bring this lawsuit and assert the claim(s) herein.

33. Defendants are making, using, offering for sale, selling, and/or importing into the United States for subsequent sale, Infringing Products that directly and/or indirectly the Patents.

34. Defendants' activities constitute willful patent infringement under 35 U.S.C. § 271.

35. Defendants have infringed the Patents through the aforesaid acts and will continue to do so unless enjoined by this Court.

36. Plaintiff has been irreparably harmed as a direct and proximate result of Defendants' infringement.

37. Plaintiff is entitled to recover damages adequate to compensate for the infringement including Defendants' profits pursuant to 35 U.S.C. § 289. Plaintiff is entitled to recover any other compensatory damages as appropriate pursuant to 35 U.S.C. § 284.

38. Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

a. A declaration that Defendants have infringed Plaintiff's design patents in the Patents;

b. A declaration that such infringement is willful;

c. An award of actual damages and disgorgement of profits as the Court deems proper or, at Plaintiff's election, an award of statutory damages for each photograph comprising the Patents;

d. Awarding Plaintiff its costs and reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

e. Awarding Plaintiff interest, including prejudgment interest, on the foregoing amounts;

f. Permanently enjoining Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendants, from directly or indirectly infringing Plaintiff's design patents or continuing to display, transfer, advertise, reproduce, or otherwise market any Patents derived or copied from the Patents or to participate or assist in any such activity; and

g. For such other relief as the Court deems just and proper.

Dated: January 12, 2026.

COPYCAT LEGAL PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
dan@copycatlegal.com

By: /s/ Daniel DeSouza
    Daniel DeSouza, Esq.